# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLORADO

| | |
|---|---|
| **CRAIG CUNNINGHAM,**<br>**Plaintiff,**<br><br>**v.**<br><br>American Auto Shield, LLC, Car Shield,<br>LLC, Roadside Protect, Inc., American<br>Bankers Insurance Company of Florida, Sing<br>for Service, DBA MEPCO, Theodore Terry,<br>Steve Proetz, and Felicia Dixon<br>**Defendant** | § § § § § § § § § § | **FILED**<br>UNITED STATES DISTRICT COURT<br>DENVER, COLORADO<br><br>**NOV -5 2021**<br><br>JEFFREY P. COLWELL<br>CLERK |

## Plaintiff's Original Complaint

## Parties

1.  The Plaintiff is Craig Cunningham and natural person and can be served at 3000 Custer Road, ste 270-206 Plano, Tx 75075

2.  American Auto Shield, LLC c/o Reg Agent Cogency Global, Inc., 7700 E. Arapahoe Road, ste 220, Centennial, CO 80112 and operating from 1597 Cole Blvd., suite 200, Lakewood, CO 80401.

3.  Theodore Terry is the owner and corporate officer of American Auto Shield and can be served at 1597 Cole Blvd. Ste 200, Lakewood, CO 80401 or 32051 Horseshoe Dr., Evergreen, CO 80439.

4.  Car Shield, LLC, C/o Reg Agent Operating from 503 Pearl Drive, St. Peters, MO 63376 c/o Felicia Dixon 500 Boone's Lick Road, St. Charles, MO 63301

5.  Steve Proetz is the general manager for Car Shield and can be served at 2312 Hidden Deer Dr., O' Fallon, MO 63368

6. Felicia Dixon is a natural person and is the principal of Car Shield and can be served at 695 Springfield Dr., Wentzville, MO 63385 or 500 Boone's Lick Road, St. Charles, MO 63301

7. American Banker's Insurance Company of Florida is a Florida corporation that can be served at 11222 Qual Roost Drive, Miami, FL 33157.

8. Sing For Service, DBA MEPCO is an Illinois corporation that can be served via Reg Agent Illinois Corporation Service Company 801 Adlai Stevenson Drive, Springfield, IL 62703.

9. John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

## JURISDICTION AND VENUE

10. Jurisdiction. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 305.053 because that claim: arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

11. **Personal Jurisdiction.** This Court has general personal jurisdiction over the defendant because the defendants reside in this district and conduct business in this district.

12. **Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the  residents, including the Plaintiff—occurred in this

District and because the Plaintiff resides in this District.

13. This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a North Carolina resident.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

14. In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

15. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

16. The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

18. Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

19. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

20. According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

21. The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

22. The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

23. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a

solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

24. The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

25. Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

26. A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**The Texas State telemarketing regulations**

27. The Texas Business and Commerce code 305.053 and 302.101 have an analogus portion that is related to the TCPA and was violated in this case.

28. The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or

subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

29. The Defendants violated the Texas Business and Commerce code 302.302 which entitles the Plaintiff to $5,000 per call.

## FACTUAL ALLEGATIONS

30. The Plaintiff has recieved at least 14 calls to his cell phone, ***-***-7262 without consent and not related to an emergency purpose selling the products and services of American Auto Shield, LLC, Roadside Protect, Inc., American Bankers Insurance Company of Florida, and Sing for Service, DBA MEPCO by marketer Carshield, LLC. The calls are alleged to be at a minimum in the table below:

| Date | CID | 14 calls min |
|------|-----|--------------|
| Sept 9, 2021 | 636-875-5603 | |
| Sept 10, 2021 | | |
| Sept 13, 2021 | | |
| Sept 14, 2021 | | |
| Sept 15, 2021 | | |
| Sept 16, 2021 | | |
| Sept 17, 2021 | | |
| Sept 22, 2021 | | |
| Sept 23, 2021 | | |
| | | |
| July 8, 2021 | 636-875-1228 | |
| July 8, 2021 | 636-875-1228 | |
| | | |
| Texts | 844-440-7509 | |
| Sept 10, 2021 | | |
| Sept 15, 2021 | | |
| Sept 18, 2021 | | |

31. The parties that placed the calls were Carshield, LLC through at the direction and with the full knowledge of their respective corporate officers Steve Proetz and Felicia Dixon regarding illegal telemarketing calls. Theodore Terry also knew that their agent Carshield, LLC was using automated calls to spam consumers nationwide with

unwanted telemarketing calls and continued to do business with Car Shield.

32. At all times relevant, the Plaintiff number ending in 7262 was on the National Do Not call List. Calls continued even after Plaintiff spoke with Steve Proetz directly and emailed a complaint to Steve Proetz regarding the unwanted telemarketing calls.

33. Each and every call was initiated using an automated telephone dialing system which has the capacity to make random or sequential calls.

34. Each and every call was placed in violation of the National Do not call list.

35. Each and every call was placed without the defendants being registered with the Texas secretary of State in violation of 302.302.

36. Each and every call violated the Texas business and commerce code 305.053.

37. Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

38. Mr. Cunningham has a limited data plan. Incoming texts and calls chip away at his monthly allotment.

39. Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

40. No emergency necessitated the calls

41. Each call was sent by an ATDS.

**Theodore Terry, Steve Proetz, and Felicia Dixon's over their respective corporations, including its Illegal Robocalling and Telemarketing**

42. At all times relevant to the claims alleged herein, Theodore Terry, Steve Proetz, and

Felicia Dixon were the primary corporate officers and executives in charge of their respective corporations. Each and every call was placed on behalf of the corporate entites owned by Theodore Terry, Steve Proetz, and Felicia Dixon.

43. Theodore Terry, Steve Proetz, and Felicia Dixon were aware that their corporations, Quogen and Digital Thrive were sending automated, telemarketing calls en masse to people, including Plaintiff, and had recieved previous complaints about these types of calls

44.  As their corporations senior-most executive, Theodore Terry, Steve Proetz, and Felicia Dixonhad the power to stop these spam campaigns.

45. As the senior-most executive, Theodore Terry, Steve Proetz, and Felicia Dixonhad the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

46.  Instead, Theodore Terry, Steve Proetz, and Felicia Dixonallowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

## Vicarious Liabity of the Sellers

47. These parties are vicariously liable under the theories of actual authority, apparant authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

48. American Auto Shield, LLC,  Roadside Protect, Inc., American Bankers Insurance Company of Florida, Sing for Service, DBA MEPCO are liable parties as the direct beneficiaries of the illegal telemarketing calls as they stood to gain the Plaintiff as a

client and quoted the Plaintiff a contract offering their products and services (Ex A).

49. The contract shows that the beneficial parties who were gaining customers were American Auto Shield, LLC, Roadside Protect, Inc., American Bankers Insurance Company of Florida, Sing for Service, DBA MEPCO.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

50. As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

51. Every entity in the contract for car warranty services should be deemed a beneficiary of the calls and held liable for damages under the TCPA under vicarious liability. Sellers are in the best position to monitor and police third party telemarketer's compliance with the TCPA and to hold otherwise would leave consumers without an effective remedy for telemarketing intrusions.

## INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS

52. Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

53. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

54. Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

**55.** Defendant's calls harmed the Plaintiff by intruding upon Plaintiff's seclusion.

**56.** The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

- Reduced Device Storage space

- Reduced data plan usage

- Invasion of privacy

- Lost time tending to text messages

- Decreased cell phone battery life

- More freqent charging of my cell phone resulting in reduced enjoyment and usage of my cell phone

- Reduced battery usage

- Annoyance

- Frustruation

- Anger

### The Plaintiff's cell phone is a residential number

57. The text messages were to the Plaintiff's cellular phonne ***-***-7262, which is the Plaintiff's personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name,

pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Violations of the Texas Business and Commerce Code 305.053**

58. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

59. The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

## I.  FIRST CLAIM FOR RELIEF

**(Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))**

**(Against All Defendants)**

1.  Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

2.  The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

3.  Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

4.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

5.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II.  SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

6.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

7.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.      a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

b.      training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

---

[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[3] *See id.* at 425 (codifying a June 26, 2003 FCC order).

c.     in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

8.     Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

9.     Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

10.     Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## III. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

12.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 305.053**, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47

---

[4] *See id.* at 425 – 26 (codifying a June 26, 2003 FCC order).

USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

13.     Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation.**Texas Business and Commerce Code 305.053(b)**

14.     Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 305.053(c).**

## IV. THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 302.302

15.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

16.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.302**, by making telephone solicitations to the Plaintiff without being registered with the Texas secretary of state

17.     Mr. Cunningham is entitled to an award of at least $5000 in damages for each such violation.**Texas Business and Commerce Code 302.302**

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff Craig Cunningham prays for judgment against the defendants jointly and severally as follows:

A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the

TCPA and Texas state law;

C.      An injunction enjoining Defendants and their affiliates and agents from

engaging in the unlawful conduct set forth herein;

D.      An award of $3000 per call in statutory damages arising from the TCPA

intentional violations jointly and severally against the corporation and individual for all

calls.

E.      An award of $1,500 in statutory damages arising from violations of the

Texas Business and Commerce code 305.053

F.      Award $5,000 per call for violations of 302.302

G.      An award to Mr. Cunningham of damages, as allowed by law under the

TCPA;

H.      An award to Mr. Cunningham of interest, costs and attorneys' fees, as

allowed by law and equity

I.      Such further relief as the Court deems necessary, just, and proper.

Craig Cunningham
Plaintiff,                          September 23, 2021


Pro-se 3000 Custer Road, ste 270-206, Plano, Tx 75075