## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

Civil Action No. 1:21-cv-02981-STV

CRAIG CUNNINGHAM,
                Plaintiff

     v.

AMERICAN AUTO SHIELD, LLC
CARSHIELD, LLC
ROADSIDE PROTECT, INC.
AMERICAN BANKERS INSURANCE
COMPANY OF FLORIDA,
SING FOR SERVICE, d/b/a MEPCO
THEODORE TERRY,
STEVE PROETZ, and
FELICIA DIXON
                Defendants

---

## DEFENDANTS NRRM, LLC (d/b/a CARSHIELD)'S, STEVE PROETZ'S, AND FELICIA DIXON'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT

---

Defendants NRRM, LLC d/b/a CarShield ("CarShield), incorrectly named as CARSHIELD, LLC, Steve Proetz, and Felicia Dixon submit their Answer to Plaintiff's Original Complaint as follows:

### PRELIMINARY STATEMENT

This case is a classic abuse of process and shakedown. Serial Plaintiff Craig Cunningham has, in his shotgun pleading, alleged that all Defendants unlawfully auto-dialed his cell phone in violation of various laws including the TCPA. But here's one the biggest problem. CarShield, the company who sold the vehicle service contract in this case, does not market through outbound dialing. It does not own an auto-dialer and relies solely on direct mail, television and radio

advertisements, social media and its website. It's makes a sale *only* when a customer initiates contact with CarShield.

Plaintiff Cunningham, who makes his living off of suing companies which he alleges auto-dialed him, staged this entire case. Using the false name Jeremiah Dutcher, Cunningham went on to CarShield's website, signed up to get a quote using a fake name and then, when CarShield, without using any auto-dialer, called to follow up on Cunningham's request, Cunningham bought the VSC under the false name and then alleged that he was illegally auto-dialed.

As a result, CarShield and the other defendants intend to seek sanctions and reimbursement of legal fees if this case is not dismissed with prejudice in its entirety.

## PARTIES

1.      The Plaintiff is Craig Cunningham and natural person and can be served at 3000 Custer Road, Ste. 270-206, Plano, TX 75075.

**Answer:** Admit upon information and belief but is not sure since he says he lives in North Carolina later.

2.      American Auto Shield, LLC c/o Reg. Agent Cogency Global, Inc., 7700 E. Arapahoe Road, Ste. 220, Centennial, CO 80112, and operating from 1597 Cole Blvd., Suite 200, Lakewood, CO 80401.

**Answer:** Admit upon information and belief.

3.      Theodore Terry is the owner and corporate officer of American Auto Shield and can be served at 1597 Cole Blvd. Ste. 200, Lakewood, CO 80401 or 32051 Horseshoe Dr., Evergreen, CO 80439.

**Answer:** Admit upon information and belief.

4.      Car Shield, LLC, C/o Reg Agent Operating from 503 Pearl Drive, St. Peters, MO 63376 c/o Felicia Dixon 500 Boone's Lick Road, St. Charles, MO 63301.

**Answer:** Deny. NRRM, LLC is the actual company name. The rest of the information is admitted.

5.      Steve Proetz is the general manager for Car Shield and can be served at 2312 Hidden Deer Dr., O'Fallon, MO 63368.

**Answer:** Admit where he can be served but otherwise deny.

6.      Felicia Dixon is a natural person and is the principal of Car Shield and can be served at 695 Springfield Dr., Wentzville, MO 63385 or 500 Boone's Lick Road, St. Charles, MO 63301.

**Answer:** Admit she is a natural person but otherwise denies the allegations.

7.      American Bankers Insurance Company of Florida is a Florida corporation that can be served at 11222 Qual Roost Drive, Miami, FL 33157.

**Answer:** Admit upon information and belief.

8.      Sing For Service, d/b/a MEPCO is an Illinois corporation that can be served via Reg. Agent Illinois Corporation Service Company, 801 Adlai Stevenson Drive, Springfield, IL 62703.

**Answer:** Admit upon information and belief.

9.      John/Jane Does 1-4 are other liable parties currently unknown to the Plaintiff.

**Answer:** Deny as there are no others.

### JURISDICTION AND VENUE

10.     <u>Jurisdiction.</u> This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims*

*v. Arrow Fin. Servs.*, LLC, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff s claim arising under Texas Business and Commerce Code 305.053 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case; and doesn't seek money damages, so it is unlikely to predominate over the TCPA claims.

**Answer:** Admit that the court would have jurisdiction over these types of claims, admits that it has jurisdiction to sanction Plaintiff, but otherwise denies these claims.

11.   Personal Jurisdiction. This Court has general personal jurisdiction over the defendant because the defendants reside in this district and conduct business in this district.

**Answer:** Admit that NRRM does business in this district but deny the remaining allegations in this paragraph.

12.   Venue. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.

**Answer:** Deny.

13.   This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above named defendants to the Plaintiff a North Carolina resident.

**Answer:** Deny.

**THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227**

14.   In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding telemarketing.

**Answer:** Admit.

15.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

**Answer:** Admit, as modified by the Supreme Court.

16.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

**Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

17.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

**Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

18.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

**Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

the law.

19.    The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

**Answer:**  Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

20.    According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

**Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

21.    The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

**Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

22.    The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines. In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

> **Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

23.    I*n the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

> **Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

24.    The FCC confirmed this principle in 2013, when it explained that "a seller ... may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." In the Matter of the Joint Petition Filed by Dish Network, LLC, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

> **Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

25.    Under the TCPA, a text message is a call. *Satteifield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951-52 (9th Cir. 2009).

**Answer:** This case is not in the Ninth Circuit, but admit that the law is what it is and this is not a factual statement in any event. CarShield also states there are no allegations of text messages in this case anyway.

26.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. E.g., Jackson Five Star Catering, Inc. v. Beason, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) CIM] many courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); Maryland v. Universal Elections, 787 F. Supp. 2d 408, 415 — 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.")

**Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

### The Texas State Telemarketing Regulations

27.     The Texas Business and Commerce code 305.053 and 302.101 have an analogous portion that is related to the TCPA and was violated in this case.

**Answer:** Admit that is the Texas law, deny except to the extent Plaintiff implies or states anything inconsistent with the law. And deny there were any violations.

28.     The Plaintiff may seek damages under this Texas law for violations of 47 USC 227 or subchapter A and seek $500 in statutory damages or $1500 for willful or knowing damages.

**Answer:** Admit except to the extent Plaintiff implies or states anything inconsistent with the law.

29.     The Defendants violated the Texas Business and Commerce code 302.302 which entitles the Plaintiff to $5,000 per call.

**Answer:** Deny.

## FACTUAL ALLEGATIONS

30.     The Plaintiff has recieved [sic] at least 14 calls to his cell phone, \*\*\*-\*\*\*-7262 without consent and not related to an emergency purpose selling the products and services of American Auto Shield, LLC, Roadside Protect, Inc., American Bankers Insurance Company of Florida, and Sing for Service, DBA MEPCO by marketer Carshield, LLC. The calls are alleged to be at a minimum in the table below:

| Date | CID | 14 calls min |
|---|---|---|
| Sept 9, 2021 | 636-875-5603 | |
| Sept 10, 2021 | | |
| Sept 13, 2021 | | |
| Sept 14, 2021 | | |
| Sept 15, 2021 | | |
| Sept 16, 2021 | | |
| Sept 17, 2021 | | |
| Sept 22, 2021 | | |
| Sept 23, 2021 | | |
| | | |
| July 8, 2021 | 636-875-1228 | |
| July 8, 2021 | 636-875-1228 | |
| | | |
| Texts | 844-440-7509 | |
| Sept 10, 2021 | | |
| Sept 15, 2021 | | |
| Sept 18, 2021 | | |

**Answer:** Deny.

31.     The parties that placed the calls were Carshield, LLC through at the direction and with the full knowledge of their respective corporate officers Steve Proetz and Felicia Dixon regarding illegal telemarketing calls. Theodore Terry also knew that their agent Carshield, LLC was using automated calls to spam consumers nationwide with unwanted telemarketing calls and continued to do business with Car Shield.

**Answer:** Deny.

32.     At all times relevant, the Plaintiff number ending in 7262 was on the National Do Not Call List. Calls continued even after Plaintiff spoke with Steve Proetz directly and emailed a complaint to Steve Proetz regarding the unwanted telemarketing calls.

**Answer:** No idea about whether his number was on the do not call list, but deny calls were made after Cunningham complained, despite his setting this whole thing up.

33.     Each and every call was initiated using an automated telephone dialing system which has the capacity to make random or sequential calls.

**Answer:** Deny.

34.     Each and every call was placed in violation of the National Do not call list.

**Answer:** Deny.

35.     Each and every call was placed without the defendants being registered with the Texas secretary of State in violation of 302.302.

**Answer:** Deny.

36.     Each and every call violated the Texas business and commerce code 305.053.

**Answer:** Deny.

37.     Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

**Answer:** Deny.

38.     Mr. Cunningham has a limited data plan. Incoming texts and calls chip away at his monthly allotment.

**Answer:** Not sufficient information so deny.

39.     Mr. Cunningham has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

**Answer:** Not sufficient information so deny.

40.     No emergency necessitated the calls.

**Answer:** There was no emergency but otherwise deny based on the other responses.

41.     Each call was sent by an ATDS.

**Answer:** Deny.

**Theodore Terry, Steve Proetz, and Felicia Dixon's over their respective corporations, including its Illegal Robocalling and Telemarketing**

42.     At all times relevant to the claims alleged herein, Theodore Terry, Steve Proetz, and Felicia Dixon were the primary corporate officers and executives in charge of their respective corporations. Each and every call was placed on behalf of the corporate entities owned by Theodore Terry, Steve Proetz, and Felicia Dixon.

**Answer:** Deny.

43.     Theodore Terry, Steve Proetz, and Felicia Dixon were aware that their corporations, Quogen and Digital Thrive were sending automated, telemarketing calls en masse to people, including Plaintiff, and had received [sic] previous complaints about these types of calls.

**Answer:** Deny.

44.     As their corporations senior-most executive, Theodore Terry, Steve Proetz, and Felicia Dixon had the power to stop these spam campaigns.

**Answer:** Deny.

45.     As the senior-most executive, Theodore Terry, Steve Proetz, and Felicia Dixon had the power to fire the managers and employees taking part of the day-to-day operations of these illegal robocalling operations.

**Answer:** Deny.

46.     Instead, Theodore Terry, Steve Proetz, and Felicia Dixon allowed the calls to continue and the responsible managers to keep their jobs—despite his knowledge of frequent do-not-call complaints from recipients of these messages, including the Plaintiff.

**Answer:** Deny.

**Vicarious Liabilty [sic] of the Sellers**

47.     These parties are vicariously liable under the theories of actual authority, apparant [sic] authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

**Answer:** Deny.

48.     American Auto Shield, LLC, Roadside Protect, Inc., American Bankers Insurance Company of Florida, Sing for Service, d/b/a MEPCO are liable parties as the direct beneficiaries

of the illegal telemarketing calls as they stood to gain the Plaintiff as a client and quoted the Plaintiff a contract offering their products and services (Ex A).

**Answer:** Deny.

49.     The contract shows that the beneficial parties who were gaining customers were American Auto Shield, LLC, Roadside Protect, Inc., American Bankers Insurance Company of Florida, Sing for Service, d/b/a MEPCO.

**Answer:** Deny.

### THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE DETERRENT EFFECT AND PURPOSE OF THE TCPA

50.     As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

**Answer:** Deny.

51.     Every entity in the contract for car warranty services should be deemed a beneficiary of the calls and held liable for damages under the TCPA under vicarious liability. Sellers are in the best position to monitor and police third party telemarketer's compliance with the TCPA and to hold otherwise would leave consumers without an effective remedy for telemarketing intrusions.

**Answer:** Deny.

**INJURY, HARM, DAMAGES, and ACTUAL DAMAGES AS A RESULT OF THE CALLS**

52.     Defendant's calls harmed the Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

**Answer:** Deny.

53.     Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiffs cellular telephone.

**Answer:** Deny.

54.     Defendant's calls harmed the Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

**Answer:** Deny.

55.     Defendant's calls harmed the Plaintiff by intruding upon Plaintiffs seclusion.

**Answer:** Deny.

56.     The Plaintiff has been harmed, injured, and damages by the calls including, but not limited to:

• Reduced Device Storage space

• Reduced data plan usage

• Invasion of privacy

• Lost time tending to text messages

• Decreased cell phone battery life

• More freqent [sic] charging of my cell phone resulting in reduced enjoyment and usage of my cell phone

• Reduced battery usage

• Annoyance

• Frustruation [sic]

• Anger

**Answer:** Deny.

### The Plaintiffs cell phone is a residential number

57.     The text messages were to the Plaintiff s cellular phonne [sic] \*\*\*-\*\*\*-7262, which is the Plaintiff s personal cell phone that he uses for personal, family, and household use. The Plaintiff maintains no landline phones at his residence and has not done so for at least 10 years and primarily relies on cellular phones to communicate with friends and family. The Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. The Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

**Answer:** Not sufficient information, so deny.

### Violations of the Texas Business and Commerce Code 305.053

58.     The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violate 47 USC 227(b). The calls by the defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

**Answer:** Deny.

59.     The calls by the defendants violated Texas law by spoofing the caller ID's per 47 USC 227(e) which in turn violates the Texas statute.

**Answer:** Deny.

### I.   FIRST CLAIM FOR RELIEF
### (Non-Emergency Robocalls to Cellular Telephones, 47 U.S.C. § 227(b)(1)(A))
### (Against All Defendants)

1.      Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**Answer:** Defendants NRRM, Proetz and Dixon restate their answers.

2.      The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent.

**Answer:** Deny.

3.      Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

**Answer:** Deny.

4.      Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(b)(3).

**Answer:** Deny.

5.      Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

**Answer:** Admits what Plaintiff purports to seek but denies he is entitled to the relief sought.

## II.    SECOND CLAIM FOR RELIEF
### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))
### (Against All Defendants)

6.    Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**Answer:** Defendants NRRM, Proetz and Dixon restate their answers.

7.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

a.    a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);[2]

b.    training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2);[3] and,

c.    in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[4]

**Answer:** Deny.

8.    Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

**Answer:** Deny.

---

[2] *See id*. at 425 (codifying a June 26, 2003 FCC order).

[3] *See id*. at 425 (codifying a June 26, 2003 FCC order).

[4] *See id*. at 425 (codifying a June 26, 2003 FCC order).

9.     Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

**Answer:** Deny.

10.    Mr. Cunningham also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

**Answer:** Admits that Plaintiff purports to seek the relief listed but deny he is entitled to such relief.

### III.    THIRD CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 305.053

11.    Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**Answer:** Defendants NRRM, Proetz and Dixon restate their answers.

12.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing robocalls to Mr. Cunningham's cellular telephone number without his prior express written consent in violation of 47 USC 227 et seq. The Defendants violated 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection.

**Answer:** Deny.

13.    Mr. Cunningham is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

**Answer:** Deny.

14.     Mr. Cunningham is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

**Answer:** Deny.

## IV.     THIRD [sic – FOURTH] CLAIM FOR RELIEF: Violations of The Texas Business and Commerce Code 302.302

15.     Mr. Cunningham realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs.

**Answer:** Defendants NRRM, Proetz and Dixon restate their answers.

16.     The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.302, by making telephone solicitations to the Plaintiff without being registered with the Texas secretary of state.

**Answer:** Deny.

17.     Mr. Cunningham is entitled to an award of at least $5000 in damages for each such violation. Texas Business and Commerce Code 302.302.

**Answer:** Deny.

### AFFIRMATIVE DEFENSES

1.     Plaintiff has failed to state any claims for which relief can be granted.

2.     Plaintiff is not entitled to any relief because he perpetrated a fraud and staged this case in order to extract money from Defendants.

3.     Plaintiff expressly consented to any calls.

4.     Plaintiff failed to mitigate his damages and indeed purposely waited so he could try to rack up damages.

5.      Plaintiff waived any claims for relief because of his fraudulent actions in trying to trap Defendants.

6.      Plaintiff's claims are barred because he contacted Defendants under false pretenses.

7.      These defendants reserve the right to assert additional defenses.

## <u>COUNTERCLAIMS</u>

Defendant NRRM, LLC d/b/a CarShield (improperly named as CarShield, LLC) asserts the following Counterclaims against Plaintiff Craig Cunningham. These counterclaims are made in addition to the above answer:

## <u>PARTIES</u>

1.      CarShield is a Missouri limited liability company with its principal place of business in St. Charles County, Missouri.

2.      Plaintiff/Counterclaim Defendant Craig Cunningham is an individual, and resident of the State of Texas.

## FACTS

3.      Mr. Cunningham is a professional litigant who regularly files pro se lawsuits asserting TCPA claims throughout the United States.[5] A PACER search alone suggests he has filed approximately 130 TCPA-related cases since 2015.

4.      In addition to those myriad lawsuits, on information and belief, Cunningham also attempts to extract, and in many cases has extracted, settlements from numerous other companies and individuals predicated on his alleged TCPA claims, oftentimes where no violation has occurred.

5.      On information and belief, Cunningham's primary source of income is the revenue he generates from his TCPA claims.

6.      Under the TCPA, Congress afforded injured citizens a private right of action and statutory damages of $500 for negligent violations of certain provisions of the TCPA, which can be trebled by the applicable court in cases of intentional or knowing violations.

7.      On information and belief, Cunningham maintains numerous phones, the primary

---

[5] *See, e.g.*, *Cunningham v. JP3 Enterprises, LLC*, et al., Case 4:19-cv-00902-ALM-CAN, Dkt. 37 (E.D. Tex. Mar. 3, 2020); *Cunningham v. Air Voice, Inc.*, CIVIL ACTION NO. 4:19-cv-00096-ALM-CAN, 2020 U.S. Dist. LEXIS 51585, at *15 (E.D. Tex. Feb. 14, 2020); *Cunningham v. Lifestyles Dev., LLC*, CIVIL ACTION NO. 4:19-cv-00006-ALM-CAN, 2019 U.S. Dist. LEXIS154112, at *9-15 (E.D. Tex. Aug. 8, 2019); *Cunningham v. Politi*, No. 4:18-cv-00362-ALM-CAN, 2019 U.S. Dist. LEXIS 102449, at *15 (E.D. Tex. Apr. 30, 2019) (same) (Nowak, J.), *reportand recommendation adopted*, No. 4:18-cv-362, 2019 U.S. Dist. LEXIS 102050 (E.D. Tex. June19, 2019); *Cunningham v. Prof'l Educ. Inst., Inc.*, CIVIL ACTION NO. 4:17-cv-00894-ALM-CAN, 2018 U.S. Dist. LEXIS 215107, at *11 (E.D. Tex. Nov. 5, 2018); *Cunningham v. SunshineConsulting Grp., LLC*, No. 3:16-2921, 2018 U.S. Dist. LEXIS 121709, at *14 (M.D. Tenn. July 20, 2018), *report and recommendation adopted*, No. 3:16-cv-02921, 2018 U.S. Dist. LEXIS 234809 (M.D. Tenn. Aug. 7, 2018); *Cunningham v. Health Plan Intermediaries Holdings, LLC*, No. 17-cv-1216, 2018 U.S. Dist. LEXIS 22921, at *19 (N.D. Ill. Feb. 13, 2018).

purpose of which is to collect allegedly unwanted phone calls, for which he then asserts TCPA claims and attempts to extract nuisance-value settlements.

8.      On information and belief, Cunningham claims that these various phones are "residential" phone lines, when in fact they are his business phones for his business of manufacturing and prosecuting TCPA claims and lawsuits.

9.      In this case, Cunningham visited carshield.com using the false name Jeremiah Dutcher, and asked CarShield to call him with a quote to purchase a vehicle service contract. He filled in the number 615-XXX-7262, which is a phone number owned by Cunningham. The contact information provided by Cunningham on the CarShield website included the fake name above with Cunningham's address and one of his many phone numbers.

10.     Professional plaintiff Cunningham signed up with the scheme to get CarShield to call him so he could later claim a bogus violation of the TCPA and Texas law.

11.     Cunningham provided this information so that he would receive calls from CarShield so that he could claim the calls were unwanted, even though no other person would benefit, as Cunningham believed he would, from his scheme involving a fake name.

12.     The Carshield website form also included a click-box to establish a clickwrap agreement for the user's consent to receive phone calls and/or text messages from CarShield, although CarShield does not use an auto-dialer in any event. Still, this box was checked by Cunningham, and thus prior express consent was provided .

13.     After receiving prior express consent to call Cunningham's phone number, CarShield called Cunningham a grand total of three times without using an auto-dialer about vehicle service agreements it sells.

14.     Cunningham allowed the calls to continue until he amassed enough to rack up bogus damage numbers and then he finally answered.

15.     Despite on the sales call Cunningham lying and telling CarShield he was Mr. Dutcher, with the same voice as the supposed Dutcher, Cunningham then contacted CarShield to demand they stop calling him and that he would be suing if CarShield did not succumb to his demands.

16.     Mr. Cunningham therefore knew, before filing this suit on that, using a false name, he opted in to receive phone calls at (615) XXX-7262, the very same phone calls that serve as the basis of his Complaint.

17.     This was a setup made under false pretenses.

18.     Mr. Cunningham, a frequent TCPA litigant with deep experience litigating TCPA claims, knew that he opted in to receive phone calls, and that sellers like CarShield would rely on that TCPA-compliant opt-in to place phone calls to his number, although in CarShield's case there was no auto-dialer anyway.

19.     Instead of correcting that manufactured opt-in using a false name, Cunningham intentionally failed to simply ask CarShield to stop the phone calls he was receiving in order to drive up his settlement demand and, when the extorted settlement was not forthcoming, he filed suit falsely claiming that the phone calls were unsolicited in his broader campaign to collect money under false pretenses via his TCPA claim.

20.     CarShield reasonably relied on the fact that the user of phone number (615) XXX-7262 had consented to receive phone calls, and that Cunningham continued to want to receive calls.

21.     CarShield took actions based on Cunningham's scheme, including incurring costs

for employee time and resources to call Cunningham as requested and solicited.

22.     In addition, CarShield has now been required to engage attorneys and incur costs associated with defending against Cunningham's spurious and fraudulently induced lawsuit—all based on its reasonable reliance on Cunningham's consent to receive phone calls and his fraudulent scheme to try to dupe CarShield into call violations it never committed.

## COUNTERCLAIM – COMMON-LAW FRAUD

23.     CarShield restates the previous paragraphs as if fully set forth here.

24.     Under Texas law, the elements of a common-law fraud claim are: (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false or made the representation recklessly without any knowledge of its truth; (3) the defendant made the representation with the intent that the other party would act on that representation or intended to induce the party's reliance on the representation; and (4) the plaintiff suffered an injury by actively and justifiably relying on that representation. *See, e.g., Franklin v. Upland Software, Inc.*, 1:18-cv-00236-LV, 2019 U.S. Dist. LEXIS 16938 (W.D. Tex. Feb. 1, 2019) (citing *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 217 (Tex. 2011)).

25.     Under Texas law, Mr. Cunningham has committed common-law fraud against CarShield because he made material, and continuous false representations to CarShield that he knew were false and that he intended CarShield to rely upon. CarShield relied on those representations to its detriment and was injured as a result.

26.     Specifically, Mr. Cunningham knew or had reason to know before his filing of this suit that his using the name "Jeremiah Dutcher" affirmatively gave CarShield consent to receive phone calls from CarShield at the phone number (615) XXX-7262.

27.     This representation was made with knowledge that Cunningham wanted to receive phone calls at his (615) XXX-7262 number so that he could use those calls as the basis for his manufactured TCPA claim.

28.     Mr. Cunningham intended CarShield to rely on those representations so that CarShield would then make calls that they reasonably believed Cunningham had requested.

29.     Cunningham undertook these steps to induce CarShield to continue to call him. CarShield relied on these representations by expending both employee time and resources to call Cunningham on his provided telephone number.

30.     Despite knowing about his false name, Cunningham continues his misrepresentations by claiming the phone calls were "unsolicited" in his  lawsuit.

31.     Mr. Cunningham then sued based on these misrepresentations, causing CarShield to incur attorneys' fees and other costs in defending this spurious, manufactured lawsuit.

### ALTERNATIVE COUNTERCLAIM – FRAUD BY NONDISCLOSURE

32.     CarShield restates the previous paragraphs as if fully set forth here.

33.     Under Texas law, the elements of fraud by nondisclosure are: (1) the defendant failed to disclose facts to the plaintiff, (2) the defendant had a duty to disclose those facts, (3) the facts were material, (4) the defendant knew the plaintiff was ignorant of the facts and the plaintiff did not have an equal opportunity to discover the facts, (5) the defendant was deliberately silent when it had a duty to speak, (6) by failing to disclose the facts, the defendant intended to induce the plaintiff to take some action or refrain from acting, (7) the plaintiff relied on the defendant's nondisclosure, and (8) the plaintiff was injured as a result of acting without that knowledge. *Franklin*, 2019 U.S. Dist. LEXIS 16938, n.4 (citing *Blankinship v. Brown*, 399

S.W.3d 303, 308 (Tex. App.—Dallas 2013)).

34.     Under Texas law, Cunningham is liable for fraud by nondisclosure.

35.     Cunningham knew or had reason to know prior to his filing of this suit that he used  the false name to affirmatively give CarShield consent to place calls to Cunningham.

36.     Cunningham took no actions to correct that opt-in until enough calls racked up.

37.     To the extent Cunningham did not wish to receive phone calls at phone number (615) XXX-7262, he intentionally concealed from or failed to disclose that fact to CarShield.

38.     Because Cunningham was the person with the most knowledge related to whether he wished to receive phone calls at his phone number (615) XXX-7262, and because he was well aware of potential liability under the TCPA (based on his many previous lawsuits), Cunningham had a duty to disclose to CarShield that he did not wish to receive the phone calls.

39.     Cunningham's failure to timely disclose his alleged desire to not receive phone calls was material because he knew or should have known that CarShield was relying on his consent to call his number (615) XXX-7262.

40.     Cunningham also knew that CarShield would be ignorant of the fact that Cunningham allegedly did not wish to receive the phone calls, and that CarShield would not have had an opportunity to discover that fact without Cunningham telling CarShield.

41.     Cunningham, however, was intentionally silent when he had a duty to speak.

42.     By failing to disclose that he allegedly did not wish to receive phone calls, Cunningham intended CarShield to place phone calls that it believed had been requested and consented to by Cunningham.

43.     CarShield expended both employee time and resources to fulfill its contractual obligations based on Mr. Cunningham's failure to disclose.

44.     Despite knowing about his fake name opt-in and failing to disclose to CarShield that he allegedly did not want to receive the phone calls, Cunningham later claimed that those messages were "unsolicited" in his demands to CarShield and subsequent lawsuit after the demanded high-nuisance-value settlement was not tendered to Cunningham.

45.     Cunningham then sued CarShield and others based on his failure to disclose, causing CarShield to incur attorneys' fees and costs in defending against this spurious suit.

## CONCLUSION AND REQUEST FOR RELIEF

CarShield requests that the Court enter a judgment that Cunningham is liable for common-law fraud and/or fraud by nondisclosure, and award CarShield actual damages, exemplary damages, interest, costs, attorneys' fees and other litigation expenses, and for all other relief, at law and equity, to which CarShield may show itself entitled.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, CarShield demands trial by jury on all issues so triable.

Dated: December 28, 2021          Respectfully Submitted,

By:          s/*Jeffrey H. Kass*
          Jeffrey H. Kass
          LEWIS BRISBOIS BISGAARD & SMITH LLP
          1700 Lincoln Street, Suite 4000
          Denver, Colorado 80203
          303.861.7760
          Jeffrey.Kass@lewisbrisbois.com
          *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I certify that on December 28, 2021, I mailed a copy of, and presented the foregoing, DEFENDANTS NRRM, LLC (d/b/a CARSHIELD)'S, STEVE PROETZ'S, AND FELICIA DIXON'S ANSWER TO PLAINTIFF'S ORIGINAL COMPLAINT to the Clerk of the Court for filing and uploading to the CM/ECF system which caused automatic electronic notification of the filing to be served upon the following; also, the answer was served via U.S. Mail, First-Class Postage Prepaid, upon:

Craig Cunningham
(*pro se* Plaintiff)
3000 Custer Road, Ste. 270-206
Plano, TX 75075

s/*Jeffrey H. Kass*
Jeffrey H. Kass, of
LEWIS BRISBOIS BISGAARD & SMITH LLP